IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>   Plaintiff,<br><br>vs.<br><br>Devon Deon Ross,<br><br>   Defendant. | No. CR-12-01191-PHX-SRB<br><br>**REPORT AND RECOMMENDATION** |

TO THE HONORABLE SUSAN R. BOLTON, SENIOR UNITED STATES DISTRICT JUDGE:

  Pending before the Court is a Petition, filed on October 6, 2016, alleging violations of supervised release. Pursuant to a Standing Order of Referral, dated July 9, 2014, the Honorable Susan R. Bolton, Senior United States District Judge, referred the Petition to Revoke Supervised Release in the above-numbered case to the undersigned Magistrate Judge to conduct a "hearing and preparation of findings and recommendations . . . and submit the necessary Report and Recommendation . . ." as authorized under 18 U.S.C. § 3401(i) and 28 U.S.C. § 636(b)(3). The parties consented in writing that this Magistrate Judge conduct this hearing on the Petition. (Doc. 63.)

**I. Procedural Background**

  On May 16, 2013, Defendant was sentenced to five months of imprisonment and 36 months of supervised release for the offense of False Statement in the Acquisition of a

Firearm. (Doc. 34 at 1.) On August 24, 2016, the Court revoked Defendant's supervised release, and sentenced Defendant to three months of home confinement and 12 months of supervised release.  (Doc. 53.)

On October 6, 2016, a Petition to Revoke Supervised Release was filed alleging two violations. (Doc. 54.)

On December 12, 2016, this Court conducted an evidentiary hearing. The Government proceeded on the two allegations:

> Allegation A: **Standard Condition #1** which states, *"You shall not commit another federal, state, or local crime during the term of supervision."*
>
> On or about September 17, 2016, Ross committed the crime of Driving With a Suspended License, a misdemeanor violation of Arizona Revised Statutes § 28-3473A. This is evidenced by Scottsdale Police Department Report No. 16-20856. A Grade C violation. U.S.S.G §7Bl.l(a)(3).
>
> Allegation B: **Standard Condition #4** which states, *"You shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer."*
>
> On September 29, 2016, Ross lied in response to the probation officer's inquiry regarding his September 17, 2016, citation from Scottsdale Police. In response to the probation officer's question, Ross stated he was pulled over by Scottsdale Police and issued a ticket for expired registration when, in fact, he was cited for driving with a suspended license. This is evidenced by the testimony of U.S. Probation Officer Chris Woodiel. A Grade C violation. U.S.S.G. §7B 1.1 (a)(3).

(Doc. 54 at 1-2.)

Defendant was present and assisted by counsel. The Government called Probation Officer Chris Woodiel and admitted Exhibits A-F into evidence without objection by Defendant.[1]  The Defendant testified.

## II. Findings of Fact

The Court submits the following findings of fact.

---

[1] The hearing exhibits do not match the exhibits contained in Doc. 62-1. The Court will refer to the exhibits admitted at the hearing, but may provide a corresponding reference to the same documents contained in Doc. 62-1.

### a. Probation Officer Chris Woodiel

On September 17, 2016, Defendant emailed Woodiel stating that Defendant had police contact. Woodiel subsequently requested, by email and text, a response from Defendant, but Defendant did not respond. On September 19, 2016, the Scottsdale Police Department informed Woodiel that Defendant was cited for a Driving on a Suspended License offense. Woodiel obtained a copy of the citation and report.

On September 29, 2016, Woodiel conducted an unannounced visit with Defendant at Defendant's house. When asked about the traffic stop, Defendant told Woodiel that he was not stopped for Driving on a Suspended License but instead was stopped for driving a vehicle with expired tags. Woodiel told Defendant that Scottsdale Police informed Woodiel that Defendant was cited for Driving on a Suspended License. Defendant said that was incorrect, and instead said the only reason for the contact was expired tags. Woodiel asked for a copy of the citation, but Defendant said he did not have a copy of the citation.

Woodiel determined that Defendant had two prior traffic related incidents:

**1)** On January 17, 2015, Tempe Police Department arrested and cited Defendant for traffic violations of DUI, Failure to Stop for Red Light, and Unsafe Lane Change. (*See* Ex. D.) Defendant was directed to report to the Scottsdale City Court. On April 21, 2015, the Scottsdale City Court dismissed the DUI charges. (*See* Ex. D at 8.) On October 7, 2015, the Scottsdale City Court entered Default Judgment against Defendant for failure to appear, which included a $779 fine and a <u>suspension</u> of Defendant's driving privilege. (Ex D at 7; Doc. 62-1 at 14.)

**2)** On November 28, 2015, a Maricopa County Deputy Sheriff stopped Defendant for speeding near US-60 and Center Street. The deputy checked the status of Defendant's license and determined it was suspended. The deputy asked Defendant if he knew his license was suspended. Defendant stated that a judge quashed the warrant and told him to go to the Motor Vehicle Department to reinstate his license. The deputy issued a ticket to Defendant and cited him with Driving on a Suspended License. (Ex. E at 5; Doc. 62-1 at

21.) Defendant was directed to appear in the Hassayampa Justice Court regarding the citation. On January 29, 2016, Defendant failed to appear in the Hassayampa Justice Court, and a default judgment was entered against him. (Ex. E at 2.)

Woodiel obtained a copy of Defendant's Motor Vehicle record. (Ex. F.) The record (dated November 15, 2016) states that Defendant's license was indefinitely suspended in 2015 and he was mailed notification.[2] The record contains two additional entries related to the Scottsdale City Court and Hassayampa Justice Court cases. Those entries state Defendant's license was suspended in each case, and he was mailed notification of each city court suspension. (Ex. F.)

Woodiel testified that Defendant's license remained suspended on the date of the instant hearing.

### b. Defendant Devin Deon Ross

Defendant knew he was required to not violate the law and contact his supervising probation officer if he had police contact.

Defendant agreed he was stopped on September 17, 2016, by a Scottsdale Police Officer near the 101 Freeway and Indian School Road. Defendant said he was pulled over for expired tags. Although he was driving, the car belonged to the passenger in the vehicle. Defendant recalled being given a citation. He was not arrested, but the officer told him that his license was suspended. Defendant told the officer he was not aware his license was suspended. Defendant was issued a citation.

Defendant agreed he contacted Woodiel and informed him of the traffic stop. Defendant testified that after that telephone contact with Woodiel, he did not recall receiving a text message or email from Woodiel asking for more information. On September 29, 2016, Woodiel met Defendant at Defendant's residence. Woodiel asked if Defendant knew his license was suspended. Defendant told Woodiel his license was not

---

[2] Woodiel testified on cross-examination that he checked the official Arizona MVD records, and the records reflected that the MVD department mailed Defendant several notices of suspension on different dates. Woodiel did not know the address the suspension notifications were mailed to.

suspended. Defendant stated that he did not have the citation when he spoke to Woodiel on September 29. Defendant said the car passenger had his paperwork and citation from the traffic stop on September 17. Defendant testified he thought he was not cited for driving on a suspended license. Defendant agreed that he signed the citation that charged him with driving on a suspended license (Ex. A), but he said he thought the citation was for expired tags. Defendant stated that he and the passenger took an "Uber" home from the traffic stop, and the passenger kept his citation.

Regarding the January 17, 2015 DUI and civil citations, Defendant stated his DUI case was dismissed. Defendant stated that he also filed for a hearing to reinstate his license. Defendant testified that the hearing was conducted in a hearing office near downtown, but the police officer did not appear for the hearing. Defendant said the suspension was then dismissed by the judge. Defendant believed his license was now valid. Defendant said he was not aware that he defaulted on his other tickets, and thus he was not aware that his license was suspended as a result of his default.

Regarding the November 28, 2015 stop by a MCSO deputy, Defendant agreed the deputy told him his license was suspended. Defendant stated that he told the deputy he went to a hearing and his suspension was dismissed. Defendant thus believed that his citation by the MCSO deputy was "invalid." Defendant stated "he didn't go to court for that" MCSO citation.

Defendant testified he never received any mail from MVD stating that his license was suspended. Defendant believed his license was not suspended. He stated he drove to his probation appointments because he was unaware his license was suspended.

**III.   Conclusions of Law**

"A district court may 'revoke a term of supervised release, and require the person to serve in prison all or part of the term of supervised release…if the court…finds by a preponderance of the evidence that the defendant violated a condition of supervised release.'" *United States v. Vallejo*, 69 F.3d 992, 994 (9th Cir. 1995) (quoting 18 U.S.C. § 3583(e)(3)).   The Court is required to determine if Defendant 1) knew or should have

known his license was suspended when he drove on September 17, 2016 (Allegation A), and 2) did not answer truthfully to Woodiel on September 29, 2016 (Allegation B).

### a.  (Allegation A) Commission of a Crime While on Supervision

The Court concludes by a preponderance of the evidence that Defendant committed the offense of Driving on a Suspended License[3] on September 17, 2016.

The parties do not dispute that Defendant's license/driving privilege was suspended after the January 17, 2015 DUI arrest. At a minimum, Defendant's license was suspended because Defendant was in default regarding the civil citations to that stop. (*See* Ex. D at 7-8.) The parties do not dispute that Defendant was told by the MCSO deputy on November 28, 2015 that Defendant's license was suspended. Defendant was cited for Driving on a Suspended License by the MCSO deputy. Defendant was given a copy of the citation. Defendant admits that "he did not go to court for that" citation because he believed the suspension was dismissed.

On September 17, 2016, Defendant knew or should have known his license was suspended.[4] Defendant's license was suspended because he defaulted on his civil traffic violations from the Tempe Police DUI stop in January 2015. (*See* Ex. D at 8.) Defendant was later cited for Driving on a Suspended License by the MCSO deputy in November 2015, but Defendant did nothing regarding that citation because he said he believed the citation was "invalid."  Any reasonable person should have known his or her license was suspended after being cited that offense by a law enforcement officer.

The Court does not find Defendant credible when he testified he believed his license was valid. Instead, it is clear to the Court Defendant chose to do nothing and

---

[3] A.R.S. § 28-3473(A): "Except as otherwise provided in this subsection, a person who drives a motor vehicle on a public highway when the person's privilege to drive a motor vehicle is suspended, revoked, canceled or refused or when the person is disqualified from driving is guilty of a class 1 misdemeanor."

[4] *State v. Yazzie*, 307 P. 3d 1042, 1045 (Ct. App. Ariz. 2013) ("we hold that the State must prove beyond a reasonable doubt that a defendant knew or should have known of his license suspension, revocation, cancellation, or refusal in prosecutions under A.R.S. § 28–3473.").

claim ignorance regarding his license status.  Defendant is articulate and intelligent. The Court does not find Defendant credible when he stated the MCSO citation was "invalid." If Defendant contested the DUI suspension by requesting a hearing for that citation, then certainly he would have gone to Hassayampa Justice Court, as ordered, to fight his MCSO citation. Instead, he did not go to Hassayampa Justice Court. The MCSO citation also contained a civil speeding violation, which Defendant was also required to adjudicate. Defendant also defaulted on this MCSO civil speeding violation. Moreover, Defendant conducted no other investigation regarding his license status after the MCSO citation. The Court does not find Defendant credible when he claims that he believed his license was valid. Instead, at a bare minimum, he chose to do nothing and was intentionally ignorant of his license status.

### b.  (Allegation B) Truthful Responses to Probation Officer

The Court concludes that on September 29, 2016, Probation Officer Woodiel asked Defendant if he was cited for Driving on a Suspended License and Defendant told Woodiel he was not cited for that offense.  Woodiel was aware Defendant had police contact, and Woodiel had a copy of the Scottsdale Police report. Woodiel knew Defendant was cited for Driving on a Suspended License. Undoubtedly, Woodiel would have directly asked Defendant if he was cited for a criminal offense. The Court finds Woodiel credible when he testified that Defendant denied being cited for the offense of Driving on a Suspended License.

The Court thus concludes Defendant was not truthful in his conversation with Probation Officer Woodiel on September 29, 2016. Defendant testified that when he met with Woodiel on September 29, Defendant told Woodiel that the traffic stop concerned only expired tags. But Defendant agrees he was told by the police officer that his license was suspended. Defendant was also cited for driving on a suspended license. Defendant signed the citation. (Ex. A.) Defendant was given a copy of the citation. Defendant had previously been cited by MCSO for Driving on a Suspended License. Defendant is too

intelligent not to have known he was cited for Driving on a Suspended License.[5] Importantly, Defendant stated on cross-examination that he went to MVD the very day of his Scottsdale citation (September 17, 2016).[6] Defendant later said he went to Scottsdale City Court (not MVD) and he learned he had tickets in collections. Regardless of where he went, Defendant agrees that on September 17, 2016, he immediately began checking the status of his license or cases. This conduct is not consistent with Defendant only being stopped for expired tags of another person's vehicle. Defendant was not truthful as required by Standard Condition #4.

## IV. Recommendation

Based on the foregoing and pursuant to 28 U.S.C. § 636(b) and LRCrim 57.6(d)(4), Rules of Practice for the District of Arizona, the undersigned Magistrate Judge **RECOMMENDS** that the Honorable Susan R. Bolton, United States District Judge, after an independent review of the record, find Defendant violated the terms of supervised release contained in Allegations A and B.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(b)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment.

**IT IS ORDERED** setting a final disposition hearing for **January 23, 2017**, at **3:45 p.m.** before the Honorable Susan R. Bolton, Senior United States District Judge, in Courtroom 502, Sandra Day O'Connor U.S. Courthouse, 401 West Washington Street, Phoenix, Arizona.

**IT IS FURTHER ORDERED** that the U.S. Probation Department shall prepare a Disposition Report and the Defendant shall cooperate with the Probation Department in

---

[5] The Court notes that Defendant previously testified that he read the "fine print" on the back of his DUI citation from January 2015, which is consistent with his intelligence and awareness.

[6] A transcript of the hearing has not been ordered. Defendant's testimony on this point is at 11:33 A.M., approximately one hour into the hearing. Also, the September 17, 2016 stop occurred at 1:47 A.M., so Defendant could have gone to the MVD or city court on the day of the stop.

its preparation of the Disposition Report.

**IT IS FURTHER ORDERED** the parties shall have 14 days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Rule 59(b)(2), Federal Rules of Criminal Procedure. Failure to timely file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Judge without further review. *See United States v. Reyna–Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.  *See* Rule 59, Federal Rules of Criminal Procedure.

Dated this 21st day of December, 2016.

Honorable John Z. Boyle
United States Magistrate Judge